IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY CROSS,                          )
                                      )
                Plaintiff,            )
                                      )
        v.                            ) Civil Action No. 05-392
                                      )
JO ANNE B. BARNHART,                  )
COMMISSIONER OF                       )
SOCIAL SECURITY,                      )
                                      )
                Defendant.            )

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 18th day of September, 2006, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits and supplemental security income under Titles II and XVI, respectively, of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 12) be, and the same hereby is, granted and the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, denied. The Commissioner's decision of February 24, 2004, will be reversed and this case will be remanded to the Commissioner for further proceedings consistent with this opinion pursuant to sentence 4 of 42 U.S.C. §405(g).

When the Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and ... the [Commissioner's] responsibility to rebut it [should] be strictly construed ....'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

Plaintiff protectively filed her applications for disability insurance benefits and supplemental security income on June 26, 2002, alleging a disability onset date of May 17, 2002, due to diabetes mellitus, gastroparesis, gastroesophageal reflux disease, asthma, migraine headaches, nausea & vomiting, recurrent pneumonia and chronic fatigue. Plaintiff's applications were denied initially. At plaintiff's request, an ALJ held a hearing on

September 16, 2003, at which plaintiff, represented by counsel, appeared and testified. On February 24, 2004, the ALJ issued a decision finding that plaintiff is not disabled. On January 18, 2005, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner.

Plaintiff was 33 years old at the time of the ALJ's decision and is classified as a younger person under the regulations. 20 C.F.R. §§404.1563(c) and 416.963(c). Plaintiff has "more than a high school (or high school equivalent) education". 20 C.F.R. §§404.1563 and 416.963. She has past relevant work experience as a medical assistant, physical therapy aide and medical secretary, but has not engaged in any substantial gainful activity since her alleged onset date. For purposes of plaintiff's Title II application, the ALJ found that plaintiff met the disability insured status requirements of the Act on her alleged onset date and has acquired sufficient quarters of coverage to remain insured at least through the date of the decision.

After reviewing the medical records and hearing testimony from plaintiff and a vocational expert, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ found that although the medical evidence establishes that plaintiff suffers from the severe impairments of insulin dependent diabetes mellitus, asthma, nonischemic cardiomyopathy, neuropathy, and carpal tunnel syndrome, those impairments, alone or in combination, do not meet or equal the criteria of any of the impairments listed in Appendix 1 of the regulations.

The ALJ also found that plaintiff retains the residual functional capacity to perform a significant range of sedentary work but with certain restrictions recognizing the limiting effects of her impairments. Taking into account those restrictions, a vocational expert identified numerous categories of jobs which plaintiff could perform based upon her age, education, work experience and residual functional capacity, including surveillance system monitor, assembler (small parts), medical clerk (hospital-clinic), receptionist (information clerk) and general insurance claims [sic]. Relying on the vocational expert's testimony, the ALJ found that plaintiff is capable of making an adjustment to numerous jobs existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. §§423(d)(1)(B) and 1382c(a)(3)(B).

The Commissioner has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a

claimant is under a disability.[1] See 20 C.F.R. §§404.1520 and 416.920; Newell v. Commissioner of Social Security, 347 F.3d 541, 545 (3d Cir. 2003). Generally, if the claimant is found disabled or not disabled at any step, the claim need not be reviewed further. Id.; see Barnhart v. Thomas, 124 S.Ct. 376 (2003).

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ improperly found that plaintiff's gastrointestinal disorders and depression are "non-severe" impairments; (2) the ALJ improperly found plaintiff "not totally credible"; and, (3) the ALJ failed to proffer an accurate hypothetical to the vocational expert incorporating all of plaintiff's limitations supported by the record. After reviewing the ALJ's decision and the record, the court finds that this case must be reversed and remanded for additional consideration for the following reasons.

First, the ALJ's step 2 analysis fails to withstand substantial evidence scrutiny. At step 2, the ALJ found that plaintiff suffers from numerous severe impairments as the court previously has noted. While there is substantial evidence in the

---

[1] The ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past-relevant work; and (5) if so, whether the claimant can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1520 and 416.920. See also Newell, 347 F.3d at 545-46.

record supporting the ALJ's finding that plaintiff does suffer from the severe impairments identified in the ALJ's step 2 finding, the ALJ's error at step 2 is in not finding that plaintiff's gastrointestinal disorders and depression also constitute severe impairments.

At step 2 of the sequential evaluation process, the ALJ must determine whether a claimant's impairment is "severe" as defined in the Act. 20 C.F.R. §§404.1520 and 416.920. "[An] impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§404.1521(a) and 416.921(a). Importantly, the step 2 inquiry is a de minimus screening device and, if the evidence presents more than a slight abnormality, the step 2 requirement of severity is met and the sequential evaluation process should continue. Newell, 347 F.3d at 546. Importantly, "[r]easonable doubts on severity are to be resolved in favor of the claimant." Id. at 547.

Here, with regard to plaintiff's gastrointestinal disorders, the ALJ found that "the records do not demonstrate that these conditions significantly limit [plaintiff's] physical or mental ability to do basic work activities." (R. 16). As to depression, the ALJ agreed with the consultative examiner, Dr. Newman, that plaintiff's mental condition likewise "does not significantly limit [plaintiff's] physical or mental ability to do basic work activities." (R. 16.)

While the ALJ parroted the regulatory language defining non-

severe impairments, what he failed to do was even mention any of the medical evidence that would support a contrary finding that plaintiff's gastrointestinal disorders and depression in fact present more than slight abnormalities. Plaintiff's outpatient medical records from Dr. Richard Hart, her primary care physician, for the period from December 19, 2000, to December 6, 2002, (R. 756-840) in and of themselves are sufficient, at a minimum, to create a reasonable doubt as to whether plaintiff's gastrointestinal disorders and depression are severe within the meaning of the Act.

Dr. Hart repeatedly noted plaintiff's difficulties resulting from those conditions in the time period after plaintiff's alleged onset date.[2] On September 9, 2002, he reported that plaintiff was having "extensive issues" regarding her gastrointestinal system. (R. 764). On October 17, 2006, Dr. Hart noted plaintiff's "GERD uncontrolled". (R. 762). On December 6, 2002, Dr. Hart recorded plaintiff's continued "difficult issues" with her gastrointestinal system. (R. 758).

With regard to plaintiff's depression, Dr. Hart indicated on

---

[2] The ALJ also failed to mention the medical evidence predating plaintiff's alleged onset date which shows that plaintiff actually was hospitalized for her gastrointestinal disorders at least seven times between December of 2000 and May of 2002 for gastrointestinal problems, primarily for severe abdominal pain. (R. 319, 376, 400, 450, 493 and 540). Although those hospitalizations fall outside the relevant time period, they are significant in that they establish that plaintiff's gastrointestinal complaints are long-standing and serious enough to warrant hospital treatment, lending credence to plaintiff's subjective testimony.

July 29, 2002, that plaintiff was "very anxious" and reported a "panic attack". (R. 765). Dr. Hart mentions that plaintiff was seeing a therapist, Charles Tripoli, LSW, to whom Dr. Hart had referred plaintiff in May of 2002 due to anxiety and depression arising from her chronic medical problems.

The record also contains two reports from Mr. Tripoli which the ALJ failed to address. In the first, dated September 9, 2002, Mr. Tripoli noted plaintiff's symptoms of depression and anxiety and his diagnosis of anxiety disorder secondary to a general medical condition, post-traumatic stress disorder and major depression, severe. (R. 666-67). He assigned plaintiff a GAF score of 48, which denotes "severe" symptoms. (Id.) He reiterated his diagnoses in a second report dated September 15, 2003, adding a diagnosis of adjustment disorder with mixed mood, and assigned a GAF score of 49. (R. 972-73).

The ALJ ignored all of the foregoing evidence in determining that plaintiff's gastrointestinal disorders and depression are not severe impairments. The only medical evidence that the ALJ cites at all in his step 2 analysis is the report from the consultative examiner, Dr. Newman, who diagnosed plaintiff with an adjustment disorder with mixed anxiety and depressed mood, which he concluded had very little or no impact on plaintiff's work capacity. (R. 736-740). However, Dr. Newman acknowledged in his report that his "[i]nformation is obtained solely from [plaintiff]" thus indicating that he had not reviewed Mr. Tripoli's reports. (R. 736). Nevertheless, the ALJ agreed with Dr. Newman and found

plaintiff's depression to be not severe.

The burden placed on a social security claimant at step 2 is not an exacting one and any doubt as to whether a claimant has made a step 2 severity showing is to be resolved in favor of the claimant. McCrea v. Barnhart, 370 F.3d 357, 360 (3d Cir. 2004). Here, there is a plethora of medical evidence suggesting that plaintiff's gastrointestinal disorders and depression are more than slight abnormalities. The ALJ's finding that those impairments are not severe without so much as addressing the medical evidence to the contrary fails substantial evidence scrutiny.

On remand, the ALJ must revisit his step 2 finding after consideration of all of the evidence of record. If he concludes after reconsideration that the reports of Dr. Hart and Mr. Tripoli should be discounted in assessing whether plaintiff's gastrointestinal disorders are more than slight abnormalities, he must explain his reasons for doing so. It is axiomatic in social security cases that, although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reasons for discounting that evidence. Fargnoli, 247 F.3d at 43. Where the ALJ fails to consider and explain his reasons for discounting all of the relevant evidence before him, he has not met his responsibilities under the Act and the case must be remanded with instructions "to review all of the pertinent medical evidence, explaining any conciliations and rejections." Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000).

Also on remand, in reassessing his step 2 finding, the ALJ must clarify his statement that plaintiff's "nausea, fatigue and headaches are considered as symptoms which are subsumed by the impairments listed above." (R. 16). As plaintiff aptly notes, it is unclear from this statement whether the "impairments listed above" to which the ALJ was referring were the impairments that the ALJ found to be severe or not severe. Moreover, the ALJ's residual functional capacity failed to incorporate any limitations arising from nausea, fatigue and headaches. The ambiguity in the ALJ's statement makes meaningful judicial review difficult.

In addition, on remand the ALJ must also re-evaluate plaintiff's subjective complaints of pain under the appropriate social security law and standards. See 20 C.F.R. §416.929; SSR 96-7p. Here, the ALJ found plaintiff's testimony "not totally credible" but he did so after ignoring the reports from her treating physician and her social worker which may have lent credence to her subjective complaints. Although an ALJ may reject a claimant's subjective testimony regarding pain and its limitations if he does not find it credible, he must explain why he is rejecting that testimony. Schaudeck v. Commissioner of Social Security, 181 F.3d 429, 433 (3d Cir. 1999).

Finally, on remand, the ALJ must revisit his step 5 residual functional capacity assessment and incorporate into it, as well as his hypothetical to the vocational expert, all restrictions and limitations supported by the evidence of record, including those supported by the reports of Dr. Hart and the social worker, if,

upon reconsideration, the ALJ finds those reports are entitled to some weight. It is well-settled that a vocational expert's response to a hypothetical that does not reflect all of a claimant's impairments that are supported by the record cannot be considered substantial evidence supporting a step 5 finding of not disabled. <u>Ramirez v. Barnhart</u>, 372 F.3d 546 (3d Cir. 2004).

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Commissioner for further proceedings consistent with this opinion.

/s/ Gustave Diamond
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
570 Edgewood Towne Center Offices
1789 S. Braddock Ave.
Pittsburgh, PA 15218

Jessica Smolar
Assistant U.S. Attorney
U.S. Post Office & Courthouse
700 Grant Street, Suite 400
Pittsburgh, PA 15219

AO 72
(Rev. 8/82)